UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

UZONNA OKOROAFOR, an individual,

Plaintiff,

v.

THE GEO GROUP, INC., a Florida corporation,

Defendant.

NO.

COMPLAINT FOR DAMAGES

DEMAND FOR JURY TRIAL

Comes now Plaintiff Uzonna Okoroafor ("Mr. Okoroafor"), by and through his counsel of record, and for causes of action and claims for relief against Defendant The GEO Group, Inc. ("Defendant GEO" or "Defendant"), alleges as follows:

## I.    INTRODUCTION

1.1    This case involves the unlawful termination of Uzonna Okoroafor, a dedicated and competent Detention Officer at The GEO Group, Inc.'s Northwest ICE Processing Center in Tacoma, Washington, after he exercised his federally and state-protected rights to care for his severely disabled twin sons. On February 21, 2021, Mr. Okoroafor's wife gave birth to twin boys at twenty-five weeks gestation. The twins initially died at birth, were resuscitated, and suffered seizures resulting in significant brain bleeds. Both infants spent nearly six months in the Neonatal Intensive Care Unit and are now recognized as disabled by the State of Washington,

COMPLAINT FOR DAMAGES - 1

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

requiring around-the-clock care and regular appointments with multiple medical specialists. After initially approving Mr. Okoroafor's intermittent FMLA leave and Washington Paid Family Medical Leave, Defendant GEO embarked on a pattern of interference and retaliation, including imposing schedule changes that conflicted with pre-scheduled medical appointments, harassing him when he attempted to use approved leave, failing to maintain confidentiality regarding his sons' medical conditions, and issuing pretextual attendance discipline culminating in his termination on May 1, 2023, just days after he contacted the EEOC. Defendant's conduct violated the Family and Medical Leave Act, 29 U.S.C. § 2615, the Washington Law Against Discrimination, RCW 49.60, Washington's Paid Family and Medical Leave Act, RCW 50A.40, and public policy protecting employees who exercise their rights to care for disabled family members.

1.2     Mr. Okoroafor has satisfied all administrative requisites before filing this lawsuit.

## II.     PARTIES

2.1     Mr. Okoroafor is a resident of Lakewood, Washington.

2.2     Defendant The GEO Group, Inc.'s principal place of business is located in Boca Raton, Florida.

2.3     Defendant is an employer for purposes of the WLAD and Title VII, employing fifteen or more employees at least twenty weeks per year.

## III.     JURISDICTION AND VENUE

3.1     This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1331. The claims in this action arise under the Constitution, laws, or treaties of the United States, specifically the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.

3.2     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this complaint occurred in the Western District of

COMPLAINT FOR DAMAGES - 2

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

Washington, including Mr. Okoroafor's employment at Defendant's Tacoma facility and his termination.

3.3     Supplemental jurisdiction over Plaintiff's state law claims is proper pursuant to 28 U.S.C. § 1367 as the state claims arise from the same nucleus of operative facts as the federal claims.

## IV.     FACTUAL BACKGROUND

### Employment Background and Performance

4.1     Defendant GEO hired Mr. Okoroafor in May 2019 as a Detention Officer at the Northwest ICE Processing Center in Tacoma, Washington. Mr. Okoroafor was assigned employee ID number 221406 and worked part-time, approximately 32 hours per week, at an hourly rate of $34.75. He was a member of the United Government Security Officers of America International Union, Local #883.

4.2     Prior to February 2021, Mr. Okoroafor's performance was good and he was not counseled or reprimanded. He was a competent and reliable employee who had always been a hard worker. His supervisors included Major Leroy Portillo, Warden Bruce Scott, Sergeant Stephens, and Captain Cassie Douglas.

### Birth of Twins and Medical Crisis

4.3     On February 21, 2021, Mr. Okoroafor's wife gave birth to twin boys, Dominic and Zyaire, at twenty-five weeks gestation. The twins were micro-preemies, each weighing approximately one pound at birth. The twins initially died at birth and were resuscitated. Upon resuscitation, both babies suffered multiple seizures resulting in significant brain bleeds, specifically Level 4 intracranial hemorrhages.

4.4     One twin had hemorrhaging in his lungs and his intestines were outside his body at birth, requiring placement of an ostomy bag. The other twin had underdeveloped lungs and

COMPLAINT FOR DAMAGES - 3

was placed on a mechanical ventilator for the first three months of his life. Both twins developed chronic lung disease and cardiac defects, including holes in their hearts due to lack of developmental time in the womb.

4.5     Both babies spent nearly six months in the Neonatal Intensive Care Unit at MultiCare Tacoma General Hospital, from February 21, 2021, until their discharge in late May and early June 2021. One twin was discharged with special in-home supplemental oxygen. During their NICU stay and throughout their lives, the twins have required and continue to require complete care by an adult.

4.6     Both twins are medically disabled and are recognized as disabled by the State of Washington. Both are non-verbal with brain shunts surgically implanted to manage post-hemorrhagic hydrocephalus. One twin cannot walk or crawl and has the developmental capacity of an eleven-month-old. The other twin recently started walking with assistance. Both have undergone at least nine surgeries each, including multiple brain surgeries and heart surgeries to address their congenital defects. Both have cysts in their spines.

4.7     The twins require around-the-clock care and regular appointments with multiple medical specialists, including pulmonologists, gastroenterologists, physical therapists, occupational therapists, speech therapists, and neurologists. Their medical conditions are lifetime conditions requiring complete adult care for all basic medical, hygienic, nutritional, and safety needs, as well as transportation assistance, physical care, and psychological comfort.

4.8     The twins' serious medical conditions have necessitated ongoing emergency interventions and hospitalizations. For example, on February 20, 2023, one of the twins suffered a shunt malfunction requiring immediate medical attention. In May 2024, one twin required emergency neurosurgical procedures to repair cracked brain shunt tubing when fluid buildup

COMPLAINT FOR DAMAGES - 4

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

around the catheter became infected. In December 2025, one twin was hospitalized for pneumonia.

### FMLA Leave and Approvals

4.9     Mr. Okoroafor provided documentation to Defendant GEO from physicians and social workers regarding the twins' disabilities and medical requirements. GEO initially rejected Mr. Okoroafor's medical documentation. Human Resources subsequently recommended that he apply for FMLA protection,

4.10     On April 8, 2021, Dr. Deloris Gries, a neonatology specialist at MultiCare Tacoma General, completed medical certifications documenting the twins' serious health conditions and the need for parental care. On May 24, 2021, Dr. Ray Sato, a neonatologist, completed additional medical certifications. On June 8, 2022, Theresa Harris, ARNP at Woodcreek Pediatrics, completed further medical certifications. These certifications documented that the twins required complete care by an adult for a lifetime condition.

4.11     With intermittent FMLA protection formally in place, Mr. Okoroafor was entitled to take leave as needed to care for his disabled sons without facing disciplinary consequences. Defendant GEO approved continuous FMLA leave initially and later approved intermittent FMLA leave for Mr. Okoroafor.

4.12     On September 30, 2022, Mr. Okoroafor's Washington Paid Family Medical Leave was approved, covering the period from June 1, 2022, through May 27, 2023. This approval provided additional state-level protection for Mr. Okoroafor's absences to care for his disabled children.

### Caregiving Challenges and Accommodation Needs

4.13     Finding childcare for the twins was nearly impossible. No one was willing to care for disabled, high-risk babies with brain injuries and oxygen tanks. As a result, Mr. Okoroafor

COMPLAINT FOR DAMAGES - 5

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

and his wife were the sole caregivers for the twins, in addition to caring for their three older children.

4.14    The twins' frequent medical appointments required drives of 45 minutes to one hour to MultiCare Tacoma General Hospital. These appointments had been scheduled months in advance with multiple specialists. Caseworkers advised that cancellations resulted in wait times of four to six months for rescheduling. During the COVID-19 pandemic in 2020 and 2021, medical facilities imposed strict rules not allowing more than one parent to be present with the twins at appointments, which meant either Mr. Okoroafor or his wife had to stay home and care for their other children while the other parent attended a medical appointment with one of the twins.

4.15    Mr. Okoroafor was forced to miss work for the twins' medical appointments, surgeries, and emergencies. These absences were medically necessary and protected by his approved FMLA and Washington Paid Family Medical Leave.

**Adverse Employment Actions**

4.16    In December 2022, Defendant GEO conducted a schedule rebid. New shift schedules began in January 2023 that conflicted with Mr. Okoroafor's pre-scheduled medical appointments for the twins. Mr. Okoroafor was called on his off-days to rebid and given shift options that conflicted with these preset medical appointments that had been scheduled months in advance. Schedule changes were posted in the break room while Mr. Okoroafor was on approved leave. He was forced to choose between missing work with the possibility of being penalized or attempting to reschedule vital appointments that kept his sons on track developmentally.

4.17    When Mr. Okoroafor expressed his concerns to supervisors about the scheduling conflicts, he was told that since GEO was a private facility, they did not have to take doctors'

COMPLAINT FOR DAMAGES - 6

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

notes, and that his children's disabilities were not the company's concern. Mr. Okoroafor was also told that bringing his concerns to Warden Bruce Scott would not change anything because Scott "simply does not care."

4.18    Each time Mr. Okoroafor attempted to use his preapproved FMLA leave, he was harassed with questions. His supervisors would verbally approve his leave requests but then deny the FMLA requests in writing, which would then be overridden by Human Resources. Mr. Okoroafor complained to Sergeant Stephens and Human Resources about this conduct.

4.19    Defendant GEO failed to maintain confidentiality regarding the twins' medical condition. Coworkers approached Mr. Okoroafor and told him he needed to be better about showing up for work. These coworkers stated they felt the twins' condition was not severe enough for Mr. Okoroafor to be using FMLA leave, particularly when the facility was severely understaffed. The coworkers had knowledge of his children's private medical details that Mr. Okoroafor had not disclosed to them. Mr. Okoroafor complained to his supervisors and GEO Human Resources about these confidentiality violations.

4.20    On February 14, 2023, Captain Cassie Douglas wrote up Mr. Okoroafor for two alleged "no call/no shows" on February 3, 2023, and February 10, 2023. Although Captain Douglas realized that the two absences were not Mr. Okoroafor's fault due to schedule confusion from the rebid, she nonetheless added six attendance points to his file, a negative performance marker. Mr. Okoroafor complained to GEO's HR Director Amy Mason, but was told that the decision to keep the write-ups would be upheld. This brought Mr. Okoroafor's attendance points to six.

4.21    On February 20, 2023, one of the twins suffered a shunt malfunction, a medical emergency. Mr. Okoroafor called Sergeant Stephens and requested approval for partial-day FMLA leave to address the emergency. Sergeant Stephens approved the request over the phone,

COMPLAINT FOR DAMAGES - 7

and Mr. Okoroafor arrived at work approximately one and a half hours late. Despite this supervisor approval, Mr. Okoroafor was accused of FMLA misuse and written up for being late. This brought his attendance points to seven.

4.22　On March 31, 2023, Mr. Okoroafor used a sick day to care for his disabled twins. Upon his return to work, Major Portillo wrote him up for using sick time that he allegedly did not have available. Mr. Okoroafor replied that he had used his accrued and unused sick time. In response, Major Portillo stated that Mr. Okoroafor was 27 minutes short of the full eight hours needed to cover the day. Mr. Okoroafor responded by asking to apply his FMLA leave to cover the 27 minutes.

4.23　Yet, even though Mr. Okoroafor's sick leave had been preapproved and he had FMLA leave available, he still received three disciplinary points for these 27 minutes. This brought his total attendance points to ten. The disciplinary paperwork was served on April 22, 2023, outside the 21-day window required by the Collective Bargaining Agreement. Additionally, Mr. Okoroafor was penalized for the alleged unexcused absence in addition to having his remaining sick time deducted, another violation of the Collective Bargaining Agreement.

4.24　At the beginning of 2023, Warden Bruce Scott had allegedly reduced the maximum allowable attendance points allowed from fifteen to twelve without informing staff. This unannounced policy change placed Mr. Okoroafor in immediate jeopardy of termination.

4.25　By April 2023, Mr. Okoroafor had become overwhelmed and extremely stressed. He feared that each day could be the day he would lose his job. Around April 21, 2023, he spoke to Union President Nicolas Oliver and expressed his concerns. Mr. Oliver agreed that Mr. Okoroafor had valid concerns and started a union grievance on his behalf regarding his sick time being utilized while still being punished for using it.

COMPLAINT FOR DAMAGES - 8

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

4.26   Days later, Mr. Oliver informed Mr. Okoroafor that management had written him up for a tardy dating back to April 11, 2023. This knowledge that another write-up existed caused Mr. Okoroafor extreme anxiety and stress, both at home and during the days he went into work, not knowing what would happen or when.

4.27   Mr. Okoroafor filed complaints with the EEOC and Washington State Department of Labor and Industries regarding FMLA interference, associational disability discrimination, and retaliation. The EEOC directed Mr. Okoroafor to contact GEO's in-house EEOC counselor.

4.28   On April 24, 2023, Mr. Okoroafor emailed Human Resources and Warden Bruce Scott requesting information for the in-house EEOC counselor. He received no response by email. He then reached out to his HR department on a company phone, informing them that he had contacted the EEOC and needed the information for GEO's in-house EEOC counselor. He was denied the information and told that GEO did not have one.

4.29   At this time, union grievances were also pending on Mr. Okoroafor's behalf. On April 25, 2023, Union President Nicolas Oliver filed Grievance #1 challenging the March 31 write-up on the grounds that it was presented outside the 21-day window required by the Collective Bargaining Agreement and violated Washington state law prohibiting discipline for authorized sick leave use.

4.30   Three days after Mr. Okoroafor informed HR that he had contacted the EEOC, on May 1, 2023, he was brought into Warden Bruce Scott's office immediately after clocking in. Mr. Okoroafor was presented with disciplinary paperwork regarding his tardiness on April 11, 2023. Major Leroy Portillo issued Mr. Okoroafor three attendance points for that tardy. As a result, Mr. Okoroafor accumulated twelve attendance points, meeting the threshold for termination under the newly reduced point system, and he was terminated.

///

COMPLAINT FOR DAMAGES - 9

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

**Defendant's Knowledge**

4.31    Defendant GEO was on notice of the twins' disabilities and medical requirements throughout Mr. Okoroafor's employment. Mr. Okoroafor provided documentation from physicians Dr. Deloris Gries, Dr. Ray Sato, and ARNP Theresa Harris, as well as from social workers. These medical certifications explicitly documented that the twins had serious health conditions requiring lifetime care by an adult.

4.32    Defendant GEO formally approved Mr. Okoroafor's intermittent FMLA leave and his Washington Paid Family Medical Leave, demonstrating clear knowledge that his absences were protected by federal and state law. Despite this knowledge, Defendant subjected Mr. Okoroafor to escalating discipline for absences that were protected under FMLA and Washington Paid Family Medical Leave.

**Damages and Impact**

4.33    As a direct and proximate result of his wrongful termination, Mr. Okoroafor lost his employment, his income of $34.75 per hour, and his benefits. In 2020, Mr. Okoroafor earned $63,488.55 from GEO. In 2021, following the twins' birth and his increased caregiving responsibilities, he earned $39,992.94. In 2022, he earned $40,202. In 2023, due to his termination on May 1, 2023, he earned only $14,604 from GEO.

4.34    The termination devastated Mr. Okoroafor's ability to care for his disabled children. He was the sole provider for his family and had relied on his high-paying salary from GEO to support his five children, including the two medically disabled twins who require extensive medical care, equipment, and therapies.

4.35    Following his termination, Mr. Okoroafor experienced severe financial hardship. He was forced to take out $10,000 in loans from family and friends. He fell behind on bills. His SUV was repossessed. He was forced to vacate his five-bedroom family home after the landlord

COMPLAINT FOR DAMAGES - 10

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

forgave back rent in exchange for leaving. He and his family were forced to live in a low-cost motel before finding a low-income apartment.

4.36    The financial and emotional stress from the termination caused Mr. Okoroafor's marriage to begin to decline drastically. His marriage to Tyeshia M. Okoroafor ultimately ended in divorce in 2025. Mr. Okoroafor attributes the breakdown of his marriage directly to the stress and financial instability caused by losing his job at GEO.

4.37    In March 2024, Mr. Okoroafor experienced temporary paralysis affecting his lower back. He was unable to move for one week with very limited mobility by week two. Medical records document that this physical manifestation was due to excessive stress on his body, a combination of built-up physical, emotional, and spiritual toll from his wrongful termination and the resulting financial and family hardship. He required physical therapy at MultiCare Tacoma General to address the lower back pain and immobility.

4.38    Mr. Okoroafor has suffered and continues to suffer severe emotional distress, humiliation, feelings of uselessness and failure as a father, husband, and provider, inconvenience, and loss of enjoyment of life. Medical records from August 2024 document his feelings of uselessness and failure as a father, husband, and provider due to the emotional toll from job termination and financial hardship. He has sought mental health treatment, including visits with a psychologist in October 2025, to cope with the psychological impact of Defendant's unlawful conduct.

4.39    Despite his efforts to find comparable employment, Mr. Okoroafor has been unable to secure a position with the same compensation and benefits he received at GEO. He has been forced to work multiple lower-paying jobs and gig work through DoorDash and Instacart to make ends meet. As of 2025, he was working as a substitute bus driver at Clover Park School District earning approximately $24.00 per hour, significantly less than his hourly rate at GEO.

COMPLAINT FOR DAMAGES - 11

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

## V.   CAUSES OF ACTION

### COUNT ONE – INTERFERENCE WITH FMLA RIGHTS IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. § 2615(a)(1)

5.1     Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

5.2     At all relevant times, Mr. Okoroafor was an eligible employee under the FMLA. He had been employed by Defendant GEO for more than twelve months and had worked at least 1,250 hours during the twelve months preceding his need for FMLA leave.

5.3     At all relevant times, Defendant GEO was a covered employer under the FMLA, employing fifty or more employees within seventy-five miles of Mr. Okoroafor's worksite.

5.4     Mr. Okoroafor was entitled to take FMLA leave to care for his twin sons, Dominic and Zyaire, who had serious health conditions. Both twins were born at twenty-five weeks gestation, suffered Level 4 brain bleeds, developed post-hemorrhagic hydrocephalus requiring brain shunts, underwent multiple surgeries, and required around-the-clock care and regular appointments with multiple medical specialists.

5.5     Mr. Okoroafor gave adequate notice of his intent to take FMLA leave. He provided medical certifications from Dr. Deloris Gries, Dr. Ray Sato, and ARNP Theresa Harris documenting his sons' serious health conditions and the need for parental care. Defendant GEO formally approved Mr. Okoroafor's intermittent FMLA leave.

5.6     Defendant GEO interfered with Mr. Okoroafor's substantive rights under the FMLA by denying him FMLA benefits and otherwise interfering with his ability to exercise his FMLA rights.

5.7     Specifically, Defendant GEO interfered with Mr. Okoroafor's FMLA rights by implementing schedule changes in January 2023 that conflicted with his pre-scheduled medical

COMPLAINT FOR DAMAGES - 12

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

appointments for his disabled sons, calling him on his off-days to rebid shifts that conflicted with appointments scheduled months in advance, and posting schedule changes while he was on approved leave.

5.8     Defendant GEO further interfered with Mr. Okoroafor's FMLA rights by harassing him with questions each time he attempted to use his preapproved FMLA leave, verbally approving his leave requests but then denying them in writing, requiring Human Resources to repeatedly override supervisory denials of his approved FMLA leave, and telling him that his children's disabilities were not the company's concern.

5.9     Defendant GEO additionally interfered with Mr. Okoroafor's FMLA rights by disciplining him for FMLA-protected absences. On February 14, 2023, Captain Douglas issued six attendance points for absences that were not Mr. Okoroafor's fault. On February 20, 2023, after Sergeant Stephens verbally approved partial-day FMLA leave for a medical emergency, Mr. Okoroafor was written up for being late and accused of FMLA misuse. On March 31, 2023, Mr. Okoroafor was disciplined with three points for using 27 minutes of time even though he had accrued sick time and FMLA leave available to cover the absence.

5.10    Defendant GEO's actions interfered with Mr. Okoroafor's right to take FMLA leave and his right to return to work without being disciplined or terminated for taking protected leave.

5.11    As a direct and proximate result of Defendant's unlawful conduct, Mr. Okoroafor has incurred and continues to incur economic losses in an amount to be proven at trial.

5.12    As a direct and proximate result of Defendant's unlawful conduct, Mr. Okoroafor has suffered and will continue to suffer mental stress, humiliation, inconvenience and loss of enjoyment of life all due to his non-economic loss in an amount to be determined at trial.

COMPLAINT FOR DAMAGES - 13

5.13    Mr. Okoroafor is entitled to recover his costs and attorneys' fees pursuant to 29 U.S.C. § 2617(a)(3).

## COUNT TWO – RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. § 2615(a)(2)

5.14    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

5.15    Mr. Okoroafor engaged in activity protected under the FMLA by taking and requesting FMLA leave to care for his disabled twin sons. Mr. Okoroafor's intermittent FMLA leave was formally approved by Defendant GEO, and his Washington Paid Family Medical Leave was approved covering June 1, 2022, through May 27, 2023.

5.16    Defendant GEO took adverse employment actions against Mr. Okoroafor, including subjecting him to escalating disciplinary measures and ultimately terminating his employment on May 1, 2023.

5.17    There was a causal connection between Mr. Okoroafor's protected activity under the FMLA and Defendant's decision to terminate him.

5.18    The causal connection is established by temporal proximity. Mr. Okoroafor contacted the EEOC regarding FMLA interference and discrimination on April 24, 2023, and informed Defendant's Human Resources department that he had contacted the EEOC. Three days later, on April 27, 2023, union grievances were filed on his behalf challenging disciplinary actions that violated the Collective Bargaining Agreement and Washington state law. Three days after informing HR that he had contacted the EEOC, on May 1, 2023, Mr. Okoroafor was terminated.

5.19    The causal connection is further established by the pattern of escalating discipline imposed specifically for absences that were protected under FMLA. Mr. Okoroafor received six

COMPLAINT FOR DAMAGES - 14

attendance points on February 14, 2023, for absences due to schedule confusion from Defendant's rebid. He received additional points on February 20, 2023, after his supervisor verbally approved FMLA leave for a medical emergency. He received three more points on March 31, 2023, for using 27 minutes even though he had FMLA leave available.

5.20    The causal connection is additionally established by direct statements from Defendant's supervisors. When Mr. Okoroafor expressed concerns about scheduling conflicts with his sons' medical appointments, he was told that his children's disabilities were not the company's concern and that bringing his concerns to Warden Bruce Scott would not change anything because Scott "simply does not care."

5.21    Defendant's actions were in direct response to Mr. Okoroafor's exercise of his FMLA rights and his complaints about interference with those rights.

5.22    As a direct and proximate result of Defendant's unlawful conduct, Mr. Okoroafor has incurred and continues to incur economic losses in an amount to be proven at trial.

5.23    As a direct and proximate result of Defendant's unlawful conduct, Mr. Okoroafor has suffered and will continue to suffer mental stress, humiliation, inconvenience and loss of enjoyment of life all due to his non-economic loss in an amount to be determined at trial.

5.24    Mr. Okoroafor is entitled to recover his costs and attorneys' fees pursuant to 29 U.S.C. § 2617(a)(3).

**COUNT THREE – ASSOCIATIONAL DISABILITY DISCRIMINATION IN VIOLATION OF THE WASHINGTON LAW AGAINST DISCRIMINATION, RCW 49.60.180**

5.25    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

5.26    At all relevant times, Mr. Okoroafor was an eligible employee for protection under the Washington Law Against Discrimination.

COMPLAINT FOR DAMAGES - 15

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

5.27    At all relevant times, Defendant GEO was an employer covered by the Washington Law Against Discrimination.

5.28    Mr. Okoroafor's twin sons, Dominic and Zyaire, have disabilities. Both twins are medically disabled and are recognized as disabled by the State of Washington. Both are non-verbal with brain shunts surgically implanted to manage post-hemorrhagic hydrocephalus. One twin cannot walk or crawl and has the developmental capacity of an eleven-month-old. Both have undergone at least nine surgeries each, including multiple brain surgeries and heart surgeries. Both require around-the-clock care and regular appointments with pulmonologists, gastroenterologists, physical therapists, occupational therapists, speech therapists, and neurologists.

5.29    Mr. Okoroafor was associated with disabled individuals, specifically his twin sons.

5.30    Defendant GEO knew of Mr. Okoroafor's association with his disabled sons. Mr. Okoroafor provided medical certifications from physicians and social workers documenting the twins' disabilities and medical requirements. Defendant GEO formally approved Mr. Okoroafor's FMLA leave specifically because of his need to care for his disabled sons.

5.31    Defendant GEO took adverse employment actions against Mr. Okoroafor, including subjecting him to escalating discipline and terminating his employment on May 1, 2023.

5.32    The adverse actions taken by Defendant GEO were because of Mr. Okoroafor's association with his disabled twin sons. When Mr. Okoroafor expressed concerns about scheduling conflicts with his sons' medical appointments, supervisors told him that his children's disabilities were not the company's concern. Defendant disciplined Mr. Okoroafor for absences that were necessary to care for his disabled sons and to attend their medical appointments,

COMPLAINT FOR DAMAGES - 16

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

surgeries, and emergencies. Defendant terminated Mr. Okoroafor shortly after he complained about discrimination based on his association with his disabled children.

5.33    Defendant's conduct constitutes unlawful discrimination based on association with disabled persons in violation of RCW 49.60.180. Washington law prohibits discrimination against an employee because of the employee's association with a person who has a disability.

5.34    As a direct and proximate result of Defendant's unlawful conduct, Mr. Okoroafor has incurred and continues to incur economic losses in an amount to be proven at trial.

5.35    As a direct and proximate result of Defendant's unlawful conduct, Mr. Okoroafor has suffered and will continue to suffer mental stress, humiliation, inconvenience and loss of enjoyment of life all due to his non-economic loss in an amount to be determined at trial.

5.36    Mr. Okoroafor is entitled to recover his costs and attorneys' fees pursuant to RCW 49.60.030(2).

## COUNT FOUR – WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

5.37    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

5.38    A clear public policy exists in Washington State that encourages and protects employees who exercise their rights to care for disabled family members and to take family and medical leave. This public policy is expressed in the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., the Washington Law Against Discrimination, RCW 49.60, et seq., and Washington's Paid Family and Medical Leave Act, RCW 50A, et seq.

5.39    A clear public policy also exists in Washington State that prohibits discrimination against employees based on their association with disabled persons. This public policy is expressed in RCW 49.60.180, which makes it an unfair practice for an employer to discriminate

COMPLAINT FOR DAMAGES - 17

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

against any person because of the presence of any sensory, mental, or physical disability of that person or because of association with a person who has a disability.

5.40    Mr. Okoroafor's discharge would jeopardize these important public policies. Allowing employers to terminate employees who exercise their rights to care for disabled children or who are associated with disabled family members would discourage employees from exercising these rights and would undermine the fundamental purposes of the FMLA, the Washington Law Against Discrimination, and Washington's Paid Family and Medical Leave Act.

5.41    Mr. Okoroafor's discharge was motivated by conduct related to these public policies. Defendant GEO terminated Mr. Okoroafor because he exercised his right to take leave to care for his disabled twin sons, because he was associated with his disabled children, and because he complained about Defendant's interference with his FMLA rights and discrimination based on his association with disabled persons.

5.42    The evidence that Mr. Okoroafor's discharge was motivated by conduct related to public policy includes Defendant's pattern of disciplining him for FMLA-protected absences, supervisors' statements that his children's disabilities were not the company's concern, Defendant's refusal to accommodate his sons' medical appointments, and the timing of his termination just days after he contacted the EEOC to complain about FMLA interference and associational disability discrimination.

5.43    As a direct and proximate result of Defendant's unlawful conduct, Mr. Okoroafor has incurred and continues to incur economic losses in an amount to be proven at trial.

5.44    As a direct and proximate result of Defendant's unlawful conduct, Mr. Okoroafor has suffered and will continue to suffer mental stress, humiliation, inconvenience and loss of enjoyment of life all due to his non-economic loss in an amount to be determined at trial.

COMPLAINT FOR DAMAGES - 18

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

**COUNT FIVE – INTERFERENCE WITH AND RETALIATION UNDER WASHINGTON'S PAID FAMILY AND MEDICAL LEAVE ACT, RCW 50A.40**

5.45    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

5.46    At all relevant times, Mr. Okoroafor was a covered employee under the Washington Paid Family and Medical Leave Act, RCW 50A.

5.47    At all relevant times, Defendant GEO was a covered employer under the Washington Paid Family and Medical Leave Act.

5.48    On September 30, 2022, Mr. Okoroafor's Washington Paid Family Medical Leave was approved, covering the period from June 1, 2022, through May 27, 2023. This approval provided state-level protection for Mr. Okoroafor's absences to care for his disabled twin sons.

5.49    Mr. Okoroafor was entitled to take leave under the PFML Act to care for his sons, who had serious health conditions requiring around-the-clock care and regular medical appointments with multiple specialists.

5.50    Defendant GEO interfered with Mr. Okoroafor's substantive rights under the PFML Act by denying him benefits and otherwise interfering with his ability to exercise his PFML rights. Specifically, Defendant imposed schedule changes that conflicted with his sons' pre-scheduled medical appointments, harassed him when he attempted to use approved leave, disciplined him for protected absences, and told him that his children's disabilities were not the company's concern.

5.51    Defendant GEO also retaliated against Mr. Okoroafor for exercising his rights under the PFML Act. Defendant subjected him to escalating disciplinary measures specifically

COMPLAINT FOR DAMAGES - 19

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

for absences protected under his approved PFML, and ultimately terminated his employment on May 1, 2023, shortly after he complained about interference with his leave rights.

5.52    RCW 50A.40.010 makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under the PFML Act. RCW 50A.40.030 makes it unlawful for an employer to discharge or in any other manner discriminate against an employee for opposing any practice made unlawful by the PFML Act or for filing a complaint or testifying in any proceeding under or related to the PFML Act.

5.53    As a direct and proximate result of Defendant's unlawful conduct, Mr. Okoroafor has incurred and continues to incur economic losses in an amount to be proven at trial.

5.54    As a direct and proximate result of Defendant's unlawful conduct, Mr. Okoroafor has suffered and will continue to suffer mental stress, humiliation, inconvenience and loss of enjoyment of life all due to his non-economic loss in an amount to be determined at trial.

5.55    Mr. Okoroafor is entitled to recover his costs and attorneys' fees pursuant to RCW 50A.40.050.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.    Damages for back pay, front pay, and lost benefits in an amount to be proved at trial;

B.    Damages for economic losses;

C.    Damages for loss of enjoyment of life, pain and suffering, mental anguish, emotional distress, and humiliation;

D.    Liquidated damages;

C.    Pre- and post-judgment interest at the statutorily prescribed rate;

D.    Compensation for any tax penalty associated with recovery;

COMPLAINT FOR DAMAGES - 20

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

E.      Prejudgment and post-judgment interest at the statutorily prescribed rate;

F.      Reasonable attorney's fees and costs;

G.      Injunctive relief; and

H.      Whatever further and additional relief the Court deems just and equitable.

DATED this 10th day of April, 2026.

/s/ Jason A. Rittereiser
Jason A. Rittereiser, WSBA No. 43628
**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, WA 98101
Phone: (206) 838-2504
Fax:    (206) 260-3055
Email: jrittereiser@hkm.com

*Attorneys for Plaintiff Uzonna Okoroafor*

COMPLAINT FOR DAMAGES - 21